UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLY WALLACE, | No.   2:15-CV-108-SMJ |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE** |
| GRANT COUNTY FIRE DISTRICT NO. 5, a public agency in the State of Washington, PATRICK HOCHSTATTER, individually and his marital community, | |
| Defendants. | |

Before the Court, with oral argument, is Defendants Grant County Fire District No. 5's and Patrick Hochstatter's Motion for Summary Judgment, ECF No. 43. Defendants seek a favorable order from this Court regarding Plaintiff Kelly Wallace's gender discrimination claims under federal and state law. Additionally, within a reply memorandum supporting their summary judgment motion, Defendants ask the Court to strike some facts the Plaintiff presented in opposition to the summary judgment motion. ECF No. 63 at 11. Wallace opposes both motions. Having reviewed the pleadings and the file in this matter, the Court

ORDER - 1

is fully informed and denies the summary judgment motion and the motion to strike. The following confirms and supplements the Court's oral ruling.

## I.  FACTUAL BACKGROUND

Defendant Grant County Fire District No. 5 (District) is a fire district in Moses Lake, Washington. ECF No. 73 at ¶ 1. The District is supervised by a fire chief and a Board of Commissioners, on which three elected commissioners sit. *Id.* at ¶ 2. Defendant Patrick Hochstatter has served as a fire commissioner for the District's Board of Commissioners for approximately 12 to 15 years. *Id.* at ¶ 6. Wallace was employed as an administrative assistant with the District from March 2007 until December 2014. *Id.* at ¶ 3. In late 2007, Wallace was appointed to serve as the District Secretary, a position that was under the supervision of the District's fire commissioners. *Id.* at ¶ 5. Wallace served as both administrative assistant and District Secretary. *Id.* at ¶ 8. Wallace was the only salaried female employee and there were not more than seventeen female volunteer firefighters out of over 100 volunteer firefighters while Wallace was employed with the District. ECF No. 53 at ¶¶ 1-2; ECF No. 64 at ¶ 96; ECF No. 65-8.

Between late 2011 and late 2013, Wallace was aware of and reported to District management alleged sexual relationships between Captain Travis Svilar (Svilar) and female volunteer firefighters he supervised. ECF No. 53 at ¶¶ 31-32, 37-40, 44. She also reported these allegations to the District's insurance broker.

ECF No. 53 at ¶ 50. The last report occurred on October 1, 2013. ECF No. 73 at ¶¶ 9-10. At that time, Wallace reported to Chief Dan Smith that Svilar and Brittany Hernandez appeared to be having sex in the sleeping quarters of the fire station the previous night. *Id*. In response, Smith stated, "I guess they should have used their quiet sex voices." ECF No. 48 at ¶ 43; ECF No. 53 at ¶ 52. In a later interaction, Smith told Wallace that the "only unprofessionalism that was happening [in reference to the allegations against Svilar] was out of [Plaintiff's] office," referencing Wallace taking a day off. ECF No. 48 at ¶ 49; ECF No. 53 at ¶ 58. After these reports, volunteer Battalion Chief Dan Svilar, Travis Svilar's father, confronted Wallace about the allegations she made against his son. ECF No. 48 at ¶ 51; ECF No. 53 at ¶ 64-65. She felt threatened by the senior Svilar but he later apologized. ECF No. 48 at ¶ 52; ECF No. 53 at ¶ 66-68.

Additionally, in several interactions during March 2014, Hochstatter made several statements to Wallace that could be construed as threatening Wallace's job and were derogatory and demeaning to women. ECF No. 48 at ¶ 77; ECF No. 53 at ¶¶ 108, 115. Specifically, Hochstatter told Wallace that "women were hard to boss, that men were a lot easier to deal with; that women were too emotional; and that [she] was too emotional and just needed to relax. He told [her] that boys were a lot easier to boss." ECF No. 48 at ¶ 77. Around that time, Wallace also feared Hochstatter, even though they were friends prior to the October 2013 allegations

ORDER - 3

against Svilar. ECF No. 48 at ¶¶ 80, 81, 85; ECF No. 53 at ¶ 113. She feared him enough to ask Battalion Chief Rick Wentworth to be present during a March meeting with Hochstatter. ECF No. 53 at ¶ 110. After these and other interactions, Wallace feared losing her job, became anxious about losing it, arguably endured threats to her job security, and her health suffered. ECF No. 53 at ¶¶ 117, 123, 124, 126, 146. Moreover, the Fire Commissioners considered combining the administrative assistant and District Secretary positions. ECF No. 53 at ¶¶ 119. When Wallace informed Hochstatter that they could not do this, he told her, "I would be very careful if I were you," which she took as a threat. ECF No. 53 at ¶¶ 120-124.

## II.    RELEVANT PROCEDURAL HISTORY

Prior to filing suit Wallace filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on January 12, 2015, and received a Notice of Right to Sue on February 5, 2015. ECF No. 1 at 2. Thereafter, Wallace timely filed suit against Defendants District and Hochstatter on April 20, 2015. ECF No. 1. On May 26, 2015, Defendants answered. ECF No. 6. On October 1, 2015, Hochstatter filed his First Motion for Summary Judgment and a separate Motion to Dismiss. ECF Nos. 13 and 16. On February 17, 2016, the Defendants withdrew their Motion to Dismiss. ECF No. 36. They did so after Wallace stipulated to dismiss her negligent infliction of emotional distress claim as to all

Defendants on February 10, 2016. ECF No. 35. A few days later, the Court denied Hochstatter's First Motion for Summary Judgment. ECF No. 38. In that order, the Court directed Defendant to show cause why he should not be sanctioned under Federal Rule of Civil Procedure 11. *Id*. The Court did not sanction Hochstatter. Thereafter, the parties stipulated to, and the Court approved, the Defendants' withdrawal of their defense that the District is not an employer covered by Title VII of the Civil Rights Act of 1964 (Title VII). ECF Nos. 51 and 71. Defendants then filed the instant Motion for Summary Judgment on May 10, 2016. ECF No. 43. Wallace filed her opposition on May 31, 2016. ECF No. 52.

Thereafter, included in a reply, Defendants filed a Motion to Strike encompassing over 130 objections, contrary citations, and responses to Wallace's Statement of Facts. ECF No. 63 and 68. Wallace then moved the Court to allow her to respond or strike the new material Defendants presented. ECF No. 75. The Court granted Wallace leave to reply and she did on July 8, 2016. ECF Nos. 79 and 81.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is

a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

For summary judgment purposes a fact is material if it might affect the suit's outcome under governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.*

## IV.   DISCUSSION

After Wallace stipulated to dismiss the negligent infliction of emotional distress claim, the only claims before the Court are Wallace's causes of action

based on gender discrimination in violation of both Title VII and the Washington

Law Against Discrimination (WLAD). ECF No. 1 at 12-14; ECF No. 35. Given

that Washington courts look to federal law when analyzing retaliation and

disparate treatment claims, and the state's sex discrimination law parallels Title

VII, the Court considers the state and federal discrimination claims together. *See*

*Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (citing *Graves*

*v. Dep't of Game*, 887 P.2d 424, 428 (Wash. Ct. App. 1994)); *Little v.*

*Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2001) (citing *Payne v.*

*Children's Home Society of Washington, Inc.*, 892 P.2d 1102, 1105 (Wash. Ct.

App. 1995)); *Danielson v. Yakima County*, 2013 U.S. Dist. LEXIS 82867, *7-8

(E.D. Wash. June 12, 2013) (stating that gender discrimination claims under Title

VII and the WLAD are subject to the *McDonnell Douglas* burden shifting

analysis).

### A.    Defendant's Motion to Strike

Before addressing the substance of the Motion for Summary Judgment, the

Court considers the Defendants' Motion to Strike facts Wallace presented in her

Declaration and accompanying Statement of Facts in support of her Opposition to

Summary Judgment. ECF No. 63 at 11; *see also* ECF Nos. 52, 53 and 57.

Defendants assert that over 130 facts contained within those documents violate

Federal Rule of Civil Procedure 37(c)(1) because they are presented for the first

time therein. ECF No. 63 at 11. Defendants then direct the Court to the specific objections contained within their Statement of Reply Facts and move to strike the objected to facts. ECF No. 64 at 7-32.

Local Rule (LR) 7.1 addresses proper motion practice in this District. Specifically, as relevant here, LR 7.1(a)(2) directs moving parties to not only file and serve the motion and any supporting materials, but also reminds parties that the motion "serves as the memorandum and *must* set forth supporting factual assertions and legal authority." (emphasis added). Though Defendants satisfy the minimum requirements under LR 7.1 by pointing to the each objected to fact and stating that these facts violate Rule 37(c)(1), for the vast majority of objections, Defendants fail to provide substantive analysis as to why or how the facts offend Rule 37. That rule prohibits parties from using information or witnesses not previously disclosed under Rule 26(a) or (e) to provide evidence on a motion, at a hearing, or at trial, unless the failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Moreover, and importantly, Defendants appear not to have complied with LR 37.1. That rule requires parties to confer and attempt to resolve their differences prior to filing a motion pursuant to Rule. 26 to 37, inclusive. Here, there is no evidence that such efforts have taken place. Therefore, Defendants' motion to strike is not properly before the Court and is therefore denied.

To be clear, this ruling only applies for purposes of resolving the instant summary judgment motion. Defendants are free to object to proffered evidence at a later time should that become necessary.

**B.    Retaliation for Engaging in a Protected Activity**

To make out a *prima facie* case of retaliation, a plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003); *see also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001).

**1.    Whether Wallace Engaged in a Protected Activity.**

The parties vigorously contest whether Wallace engaged in protected activity. Defendants assert that "[a]ny suggestion of sexual harassment is negated by the fact that the two firefighters, Travis Svilar and Brittany Hernandez, were in a known relationship and engaged to be married at the time." ECF No. 68 at 4. Moreover, they assert that Wallace's complaints regarding Svilar's alleged past sexual relationships with subordinates are immaterial since they do not affect the case's outcome under governing law. *Id.* at 5. Defendants point to two cases holding that plaintiffs complaining about *consensual* sexual relationships do not engage in protected activity. *Id.* at 4-5 (citing *Reiber v. City of Pullman*, 11-CV-0129-TOR, 2013 WL 3984442 at *10 (E.D. Wash. Aug. 1, 2013); *Osborne v.*

*Boeing Co.*, C15-2223RSL, 2016 WL 1046094 at *4 (W.D. Wash. Mar. 16, 2016)).

Defendants correctly state the law; courts have held that complaining about a consensual sexual relationship in the workplace does not rise to a legally protected activity. Here, however, it is not clear on this record whether Wallace *knew* at the time of her October 2013 complaint that she reported a consensual sexual relationship between Svilar and Hernandez, a volunteer firefighter. Defendants point to Plaintiff's Third Supplemental Answers and Svilar's deposition as proof that Wallace knew that Svilar and Hernandez were in a known relationship and engaged to be married at the time. ECF No. 68 at 4-5; ECF No. 66 at ¶¶ 97 and 98. However, these citations do not undisputedly establish that assertion. Whether the relationship was "known" does not establish that Wallace herself knew. Moreover, Wallace's Third Supplemental Answers put the word "dating" in quotes. ECF No. 65-9 at 5. From this alone, it is not clear what Wallace *knew* at the time regarding the relationship between Svilar and Hernandez.

Additionally, given that (1) Wallace asserts that she reported Svilar's alleged past sexual encounters with other subordinate female volunteer firefighters, (2) Svilar's relative position of authority vis-à-vis the women Wallace claimed he allegedly engaged in sexual relationships with, and (3) the discrepancy

between Svilar's testimony about his alleged relationship with Amanda Ruiz, one of the referenced subordinates, and the phone records showing communications between the two, a genuine dispute of material fact exists. ECF No. 81 at 3-4; ECF No. 53 at 36-37.

Defendants object to Wallace's use of past events to support the October 2013 report. ECF No. 68 at 5. However, courts can consider past incidents as relevant background. *Kortan v. California Youth Authority*, 217 F.3d 1104, 1109 (2000) (finding that "whether actionable in and of themselves, untimely claims serve as relevant background evidence to put timely claims in context" (citations omitted)). Svilar's past alleged incidents are relevant to place Wallace's October 2013 report into context.

As such, on these facts, at this stage of the litigation, there is a genuine dispute of material fact for a jury to address as to whether Wallace engaged in a protected activity.

### 2. Whether Wallace Suffered an Adverse Employment Action.

To be actionable, an adverse employment action must be "non-trivial" and deter reasonable employees from complaining about Title VII violations. *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005). Here, Wallace alleges several materially adverse acts, including: (1) the year-end 2013 verbal

and oral performance reviews identifying categories where she "needs improvement" and the discrepancy between the two reviews; (2) efforts to combine the District Secretary and administrative assistant positions; and (3) discriminatory and derogatory statements allegedly made by Hochstatter to her, among other acts. ECF No. 52.

Defendants focus on the performance review. ECF No. 68 at 7-10. They rely in part on *Kortan*, which addresses whether or not performance reviews are adverse employment actions. ECF No. 43 at 17-18. There, the court held that the negative evaluation was not an adverse employment action. *Kortan* 217 F.3d at 1112. However, in that case, two performance evaluations were at issue, including one that corrected a previous lower performance mark. *Id.* Here, there are two evaluations as well, one oral and one verbal. ECF No 52 at 9. But, unlike in *Kortan*, there was no corrective action. Indeed, the subsequent written evaluation contained three "needs improvement" ratings versus the two given during the preceding oral evaluation. *Id*. Factually, the two cases are distinguishable. Moreover, Wallace alleges more than just the performance review as an adverse employment action. Even if the performance review was the only alleged adverse act, undeserved performance ratings, if proven, are cognizable. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

As such, on these facts, there is a genuine dispute of material fact whether or not the actions taken against Wallace would dissuade employees from complaining about unlawful behavior.

### 3.    Whether there is a Causal Link Between the Protected Activity and the Adverse Employment Action.

Lastly, Wallace must establish a causal link between her October 2013 report and the adverse employment action. *Little*, 301 F.3d at 969. Given that genuine disputes of material facts remain as to this claim's first two elements, the Court cannot conclude as a matter of law whether a causal link exists.

As such, Wallace's retaliation claim survives summary judgment.

### C.    Hostile Work Environment

To establish a *prima facie* case for hostile work environment, Wallace must prove that (1) she was subjected to verbal or physical conduct of a harassing nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Kortan* 217 F.3d at 1109-1110; *see also Little*, 301 F.3d at 966 (citing *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)). Wallace must also show that the alleged conduct occurred because of her sex or gender and that it was the motivating factor for the harassing conduct. *Kahn v. Salerno*, 951 P.2d 321, 328 (Wash. Ct. App. 1998). The conduct at issue must be extreme and objectively and subjectively offensive. *Kortan* 217 F.3d at 1110. But

1    it need not be "motivated by sexual desire to support an inference of

2    discrimination based on sex." *Id.* (citations omitted). A "general hostility to the

3    presence of women in the workplace" is enough. *Id.* (citations omitted).

4         Here, the parties primarily contest the third element. ECF No. 43 at 10-15;

5    ECF No. 52 at 14-17. Defendants note that one alleged hostile verbal exchange

6    between the elder Svilar and Wallace was not gender based. ECF No. 43 at 14.

7    Besides this brief assertion, the parties' disagreement over the third element

8    centers on severity and pervasiveness. As such, the Court considers elements one

9    and two uncontested as to the other alleged acts, exclusive of Svilar's father's

10   alleged statement, and only discusses the third element.

11        Defendants focus on the infrequency of the verbal comments at issue.

12   Indeed, they point out that Hochstatter's offending comments about women only

13   happened once and Wallace's other allegations do not constitute sexual

14   harassment. ECF No. 43 at 13-14. Defendants here also rely on *Kortan.* There, the

15   court found that one-time derogatory comments about women did not create

16   triable issues about the frequency, severity, or abusiveness of the conduct at issue.

17   *Kortan*, 217 F.3d at 1111.

18        However, as the dissent in *Kortan* reminds us, a case's particular

19   circumstances should be carefully considered. *Id.* at 1113. Moreover, courts look

20   to all the relevant circumstances when determining whether a work environment is

hostile or abusive. *Id.* at 1111. This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted).

On this record, construed favorably to Wallace, a jury could reasonably find that her work place became hostile to women. Wallace was the only salaried female employee and there were not more than seventeen female volunteer firefighters out of over 100 volunteer firefighters. ECF No. 53 at ¶¶ 1-2; ECF No. 64 at ¶ 96; ECF No. 65-8. On October 1, 2013, Wallace reported to Smith that Svilar and Hernandez appeared to be having sex in the sleeping quarters of the fire station the previous night. ECF No. 73 at ¶¶ 9-10. In response, Smith stated, "I guess they should have used their quiet sex voices." ECF No. 48 at ¶ 43; ECF No. 53 at ¶ 52. In a later interaction, Smith told Wallace that the "only unprofessionalism that was happening [in reference to the allegations against Svilar] was out of [Plaintiff's] office," referencing Wallace taking a day off. ECF No. 48 at ¶ 49; ECF No. 53 at ¶ 58. Additionally, in March 2014, Hochstatter made several statements that could be construed as threatening Wallace's job and derogatory and demeaning to women. ECF No. 48 at ¶77; ECF No. 53 at ¶¶ 108, 115. Around this time, Wallace also feared Hochstatter, even though they previously were friends. ECF No. 48 at ¶¶ 80, 81, 85; ECF No. 53 at ¶ 113. She

feared him enough to ask Battalion Chief Rick Wentworth to be present during her March meeting with Defendant Hochstatter. ECF No. 53 at ¶ 110. After these and other interactions, Wallace feared losing her job, became anxious about losing it, arguably endured threats to her job security, and her health suffered. ECF No. 53 at ¶¶ 117, 123, 124, 126, 146. Moreover, the Fire Commissioners considered combining the administrative assistant and District Secretary positions. ECF No. 53 at ¶¶ 119. When Wallace informed Hochstatter that they could not do this, he told her, "I would be very careful if I were you," which she interpreted as a threat. ECF No. 53 at ¶¶ 120-124.

Whereas Defendants focus on Hochstatter's one-time derogatory and demeaning comments that women are "hard to boss," men are easier to manage, women are "too emotional," and that Wallace needed to "relax," the totality of the circumstances portray incidents that collectively could have altered Wallace's conditions of employment. Taken together, they create a triable issue for a jury.

### D.    Disparate Treatment

To state a *prima facie* case for gender discrimination in violation of Title VII and the WLAD, Wallace must establish that (1) she belonged to a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) similarly situated employees not in her protected class received more favorable treatment. *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116,

1123 (9th Cir. 2009); *Kuest v. Regent Assisted Living, Inc.*, 43 P.3d 23, 44 (Wash. Ct. App. 2002). These claims are ordinarily subject to the *McDonnell Douglas* burden shifting analysis, under which, if Plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for taking the challenged action, and if the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretext for discrimination. *Danielson v. Yakima Cty.*, 2013 WL 2639241 at *3 (E.D. Wash. June 12, 2013) (citing *Nicholson*, 580 F.3d at 1123, *Keust*, 43 P.3d at 44). However, when responding to a summary judgment motion, after establishing a prima facie case, a plaintiff can avoid this burden shifting scheme by "simply [producing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the defendant. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citation omitted).

Here, Wallace has provided sufficient evidence of a discriminatory motive. Based on the above discussion, she has alleged sufficient facts to create a triable issue as to whether or not a discriminatory reason underpinned the Defendants' motivations. As such, Wallace's disparate treatment claim also survives summary judgment.

Given the discussion above, the Court need not rule on the propriety of Wallace's constructive discharge claim at this juncture.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.   Defendants' Motion for Summary Judgment, **ECF No. 43**, is **DENIED**.

2.   Defendants' Motion to Strike, **ECF No. 63**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 7th day of October 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER - 18